# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

ZODIAC 21, INC.,

CIVIL ACTION

VERSUS

20-63-SDD-RLB

OYO HOTELS, INC.

*consolidated with*

TRIDENT HOSPITALITY, INC.

CIVIL ACTION

VERSUS

20-67-SDD-RLB

OYO HOTELS, INC.

## RULING

In these consolidated matters, before the Court is a *Partial Motion to Dismiss*[1] filed by Defendant, Oyo Hotels, Inc. ("Oyo"). Plaintiffs, Zodiac 21, Inc. ("Zodiac") and Trident Hospitality, Inc. ("Trident") (collectively "Plaintiffs")[2] jointly filed an *Opposition*[3] to this motion, to which Oyo filed a *Reply*.[4] Because Plaintiffs' *First Amended Complaints* allege the same causes of action and are nearly identical, this *Ruling* applies to both Plaintiffs except where otherwise indicated.

---

[1] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17.
[2] Zodiac and Trident initially maintained separate cases, but those actions were consolidated for pretrial matters, including discovery. 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 16.
[3] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18.
[4] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 19.

## I.    BACKGROUND

In this diversity action, Plaintiffs assert several causes of action seeking to remedy alleged injuries sustained during brief contractual stints with Oyo. Plaintiffs each own a hotel, and Oyo is an international hotel company. Plaintiffs are sister companies. Plaintiffs allege that Oyo approached Plaintiffs in 2019 with an offer to provide revenue management services and capital for property improvements.[5] Under both the Zodiac–Oyo contract and the Trident–Oyo contract, Oyo would: provide Plaintiffs with capital for property improvements, "control hotel rates and the booking process," provide Plaintiffs with a minimum amount of guaranteed revenue, and allow Plaintiffs to utilize its (Oyo's) brand.[6]

The contractual relationships were short and discordant. Plaintiffs allege that after Oyo took over bookings at each hotel, Oyo lowered the rates, did not increase revenue, did not remit to Plaintiffs revenue from "no-shows" and cancellations, and did not pay the minimum guaranteed revenue amount.[7] Trident also alleges that it was not paid the capital for property improvements until December 11, 2019.[8] On December 19, 2019, Plaintiffs notified Oyo that they were terminating the contracts pursuant to the termination provisions and demanded that Oyo pay Plaintiffs the guaranteed revenue amounts allegedly due under the contracts.[9] The following day, Oyo responded to Zodiac's notice

---

[5] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13; Trident was formed on September 9, 2019 and executed the contract with Oyo on September 19. *Id.* Zodiac contracted with Oyo on June 24, 2019. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7.

[6] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 2, ¶ 4; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 2, ¶ 2.

[7] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 3, ¶ 7; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 6, ¶ 14.

[8] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 6, ¶ 14.

[9] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 5, ¶ 11; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 5, ¶ 11.

of termination with its own notice of termination and demanded that Zodiac: return the capital earmarked for improvements, return the guaranteed revenue amounts that were paid (although Zodiac alleges that none were), pay a termination fee, and pay Oyo's expenses.[10] Oyo sent Trident a similar demand on January 29, 2020.[11]

Plaintiffs each allege seven claims: (1) breach of contract under Louisiana law,[12] (2) tortious breach of contract under Louisiana law,[13] (3) "tortious breach of contract under the Texas Deceptive Trade Practices and Consumer Protection Act" ("DTPA"),[14] (4) violations of the Louisiana Unfair Trade Practice and Consumer Law ("LUTPA"),[15] (5) breach of fiduciary duty under Louisiana law,[16] (6) breach of fiduciary duty under Texas law,[17] and (7) breach of contract under Texas law.[18] Oyo moves to dismiss claims (1)–(6).[19]

## II.    LAW AND ANALYSIS

Plaintiffs invoke this Court's diversity jurisdiction under 28 U.S.C. § 1332. Jurisdiction is proper because the parties are completely diverse,[20] and the amount in

---

[10] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 5, ¶ 12.

[11] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 9, ¶ 24.

[12] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, pp. 8–9, ¶¶ 21–24 (specifically the second pair of paragraphs 21 and 22); Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 10, ¶¶ 25–28.

[13] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, pp. 9–10, ¶¶ 27–28; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 11, ¶¶ 31–32.

[14] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, pp. 10–11, ¶¶ 32–35; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 pp. 12–13, ¶¶ 36–39.

[15] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, pp. 6–8, ¶¶ 15–22; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 pp. 7–9, ¶¶ 16–24.

[16] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 9, ¶¶ 25–26; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 pp. 10–11, ¶¶ 29–30.

[17] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 10, ¶¶ 29–31; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 pp. 11–12, ¶¶ 33–35.

[18] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, pp. 11–12, ¶¶ 36–39; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 13, ¶¶ 40–42.

[19] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17-1, p. 2.

[20] Oyo is incorporated in Delaware and has its principal place of business in Texas. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, pp. 1–2, ¶ 2. Zodiac is incorporated in Tennessee and has its principal place

controversy exceeds $75,000.00.[21] Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because the Zodiac-Oyo contract was negotiated, signed, and to be performed in this District[22] and the Trident-Oyo contract was negotiated and signed in this District.[23]

### A. Rule 12(b)(6) Motion to Dismiss

When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"[24] The Court may consider "the complaint, its proper attachments, 'documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.'"[25] "To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'"[26]

In *Twombly*, the United States Supreme Court set forth the basic criteria necessary for a complaint to survive a Rule 12(b)(6) motion to dismiss. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[27] A complaint is also insufficient if it merely "tenders 'naked assertion[s]' devoid

---

of business in Louisiana. Id. at p. 1, ¶ 1–2. Trident is incorporated in Louisiana and has its principal place of business in Louisiana. Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 1, ¶ 1.

[21] Zodiac alleges damages of "at least $130,000." Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 12, ¶ 39. Trident alleges damages of "at least $211,376.43." Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 pp. 13, ¶ 42.

[22] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No.7, p. 2.

[23] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 2–3.

[24] *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d 464, 467 (5th Cir. 2004)).

[25] *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quoting *Dorsey v, Portfolio Equity, Inc.*, 540 F. 3d 333. 338 (5th Cir. 2008).

[26] *In re Katrina Canal Breaches Litigation*, 495 F.3d at 205 (quoting *Martin v. Eby Constr. Co. v. Dallas Area Rapid Transit,* 369 F.3d at 467).

[27] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted) (hereinafter *Twombly*).

of 'further factual enhancement.'"[28] However, "[a] claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29] In order to satisfy the plausibility standard, the plaintiff must show "more than a sheer possibility that the defendant has acted unlawfully."[30] "Furthermore, while the court must accept well-pleaded facts as true, it will not 'strain to find inferences favorable to the plaintiff.'"[31] "[O]n a motion to dismiss, courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[32]

Before beginning substantive analysis, the Court notes that Plaintiffs failed to brief any opposition to the *Motion to Dismiss* their breach of contract claims under Louisiana law.[33] As such, those claims are deemed abandoned and are therefore dismissed.[34] Plaintiffs also neglected to oppose dismissal of their claims for tortious breach of contract under Louisiana law. The only reference to those claims is in Plaintiffs' extensive choice-

---

[28] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted) (hereinafter "*Iqbal*").

[29] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).

[30] *Id.*

[31] *Taha v. William Marsh Rice University*, 2012 WL 1576099 at *2 (quoting *Southland Sec. Corp. v. Inspire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

[32] *Twombly*, 550 U.S. at 556 (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)).

[33] See Plaintiffs' *Memorandum in Opposition to Motion to Dismiss*; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18.

[34] *See U.S. ex rel. Woods v. SouthernCare, Inc.*, 2013 WL 1339375 at *7 (S.D. Miss. Mar. 30, 2013)("The Relators did not adequately brief their opposition to the Defendant's Motion to Dismiss Count Three on state law claims of fraud, suppression, and deceit. As such, they have abandoned Count Three.") S*ee Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n. 1 (5th Cir. 2006) (concluding that plaintiff's failure to defend her "retaliatory abandonment" claim in response to the defendant's motion to dismiss constituted abandonment of the claim); *Dean v. One Life Am., Inc.*, No. 4:11–cv–203–CWR–LRA, 2013 WL 870352, at *2 (S.D. Miss. Mar. 7, 2013) (holding that by failing to address the defendant's argument in her response, the plaintiff abandoned her claim); *Alexander v. Brookhaven Sch. Dist.*, No. 3:07–CV–640–DPJ–JCS, 2009 WL 224902, at *4 (S.D. Miss. Jan. 28, 2009) (stating that the plaintiff "appears to have abandoned [her Equal Pay Act] claim having not defended it in her response" to the defendant's motion to dismiss), aff'd, 428 F. App'x 303 (5th Cir. 2011)).

of-law argument.[35] Plaintiffs cite no authority identifying the elements of a tortious breach of contract claim and do not offer any substantive argument opposing dismissal of their tortious breach of contract claims. Plaintiffs' tortious breach of contract claims under Louisiana law are subject to dismissal for failure to oppose.

Failure to oppose notwithstanding, Plaintiffs' tortious breach of contract claims under Louisiana law also fail as a matter of law. Under Louisiana law, to state a claim for tortious breach of contract, the plaintiff must plead facts that demonstrate that its damages flow from tort rather than contract.[36] "The classic distinction between damages *ex contractu* and damages *ex delicto* is that the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons."[37] In the instant case, Plaintiffs allege that Oyo had duties to: prudently set rates for the hotels, collect money on behalf of Plaintiffs, and remit the money to Plaintiffs.[38] These duties clearly flow from the contracts among the parties and not from any general duty owed to all persons. As such, Plaintiffs' claims for tortious breach of contract under Louisiana law fail as a matter of law.

Plaintiffs plead claims under Texas and Louisiana substantive law. The parties disagree as to which states' substantive law should apply to the claims. Advancing the

---

[35] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, pp. 1–6.

[36] *Robertson v. Sun Life Fin.*, 2012-2003 (La. App. 1 Cir. 9/13/13), 187 So. 3d 473, 479.

[37] *Id.* (citing *Naquin v. Bollinger Shipyards, Inc.*, 2011–1217 (La. App. 1st Cir. 9/7/12), 102 So.3d 875, 878, *writs denied*, 2012–2676, 2012–2754 (La.2/8/13), 108 So.3d 87, 93).

[38] The list of duties comes from the *First Amended Complaints* and Plaintiff's "Breach of Fiduciary Duties Under Texas Law" section of their *Memorandum in Opposition to Motion to Dismiss*. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, pp. 10–11; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 9, ¶ 26; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 11, ¶ 30.

argument that the contracts contain Texas choice-of-law clauses, Oyo contends that Texas law should apply.[39] Plaintiffs contend that Louisiana law should apply.[40]

**B. Choice-of-Law Analysis**

1. Analysis of the Contracts' Choice-of-Law Clauses

As discussed above, both contracts contain a Texas choice-of-law clause. The choice-of-law analysis proceeds in two steps. First, the Court must analyze the choice-of-law clauses to determine whether Plaintiffs' remaining claims fall within the scope of the clauses. Second, the Court must determine whether Louisiana's choice-of-law rules will give effect to the clauses.

Plaintiffs argue that Louisiana law should apply because the choice-of-law clauses at issue are too narrow to encompass the claims arising in "tort" and under the consumer protection statutes.[41] Specifically, Plaintiffs argue that the choice-of-law clauses only apply to claims "arising under" the contracts.[42] Naturally, Oyo argues that the clauses are broad enough to embrace all of Plaintiffs' claims.[43]

It is first necessary to determine which state's law will apply to the interpretation of the scope of the choice-of-law clause. While there is some disagreement on this issue

---

[39] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 19, p. 2–6.

[40] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, p. 2–6.

[41] Plaintiffs' only mention of the Louisiana breach of fiduciary duty claim is in reference to the "tort" claims that they argue should be governed by Louisiana law. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, pp. 1–6. While breach of fiduciary duty sounds in contract, (*Louisiana v. Guidry*, 489 F.3d 692, 705 (5th Cir. 2007)), the Court will give Plaintiffs the benefit of the doubt.

[42] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, p. 3.

[43] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 19, p. 4.

62300

nationwide,[44] the Fifth Circuit appears to apply the law of the forum state.[45] Additionally, as the Eighth Circuit has noted, it seems unreasonable to use a clause's choice-of-law to determine the scope and effect of the clause.[46] Texas and Louisiana laws are very similar and, under Fifth Circuit precedent, when "there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice-of-law analysis."[47]

Both Texas and Louisiana law distinguish between choice-of-law provisions that apply only to the interpretation of a contract and those which, because of their breadth, control all disputes between the contracting parties.[48] The Louisiana Third Circuit Court of Appeal held that, where the choice-of-law clause provided: "'This agreement shall be governed by and construed . . . in accordance with the law of the state of Louisiana for land work,'" the determination of whether an employee was an independent contractor did not fall within the scope of the clause.[49] Similarly, the Texas Supreme Court held that,

---

[44] See *Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 597 (8th Cir. 2007) (concluding that interpreting a choice-of-law clause's scope under the chosen law rather than the forum law would "give effect to that provision before the court's analytical determination of what effect it should have"). But see *Fin. One Pub. Co. v. Lehman Bros. Special Fin.*, 414 F.3d 325, 332 (2d Cir. 2005) (concluding that the scope of the choice-of-law provision is a matter of contract interpretation so its scope should be interpreted using the law specified in the choice-of-law provision).

[45] *Caton v. Leach Corp.*, 896 F.2d 939, 943 (5th Cir. 1990); *Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 792 F. Supp. 2d 948, 952–54 (S.D. Tex. 2011); *Hoisting Wire Rope & Sling, LLC* v. *Accu-Tech Computer Servs.*, No. 2:16-CV-61, 2017 WL 6816502, at *2 (S.D. Tex. Dec. 15, 2017), *report and recommendation adopted*, No. 2:16-CV-00061, 2018 WL 309774 (S.D. Tex. Jan. 5, 2018).

[46] *Schwan's Sales Enterprises, Inc. v. SIG Pack, Inc.*, 476 F.3d 594, 597 (8th Cir. 2007).

[47] *R.R. Mgmt. Co. v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005); *Axis Oilfield Rentals, LLC v. Mining, Rock, Excavation & Constr., LLC*, 223 F. Supp. 3d 548, 554–555 (E.D. La. 2016).

[48] *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999) ("This provision, by its terms, applies only to the interpretation and enforcement of the contractual agreement. It does not purport to encompass all disputes between the parties or to encompass tort claims."); *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. 15-CV-1720, 2015 WL 7281618, at *11 (E.D. La. Nov. 16, 2015) (collecting cases); *Foshee v. Torch Operating Co.*, 763 So. 2d 82, 89 (La. App. 3d Cir. 5/17/00); *Schoemann v. eWellness Healthcare Corp.*, No. CV 17-00123-BAJ-EWD, 2018 WL 4346882, at *2 (M.D. La. Jan. 19, 2018).

[49] *Foshee v. Torch Operating Co.*, 1999-1863 (La. App. 3 Cir. 5/17/00), 763 So. 2d 82, 88–90, *writ denied*, 2000-2302 (La. 10/27/00), 772 So. 2d 658.

where the choice-of-law clause provided: "'This agreement shall be interpreted and enforced in accordance with the laws of the State of Texas, U.S.A.,'" other disputes between the parties and tort claims were not necessarily governed by Texas law.[50] Finally, the federal district court for the Eastern District of Louisiana held that, where the choice-of-law clause provided: "This agreement is made subject to and shall be construed under the laws of the State of Texas (excluding its conflicts-of-laws principles)," the clause did not control the plaintiff's tort claims.[51]

In contrast, the federal district court for the Southern District of Texas held that where a choice-of-law clause provided for the application of Mexican law to "[a]ll disputes which may arise in connection with the performance of this Agreement . . . ," the plaintiff's tort claims were included within the breadth of the clause.[52] Similarly, the Louisiana First Circuit Court of Appeal held that, where a choice-of-law clause provided: "The applicable law with respect to the work to be performed will be the law of the State in which said property is located," the choice-of-law clause included a claim based on fraudulent conduct.[53] And, finally, in *Caton v. Leach Corp.* the United States Court of Appeals for the Fifth Circuit provided a hypothetical example of a broad choice-of-law clause stating that a clause that chose "a particular state's law to 'govern, construe and enforce all of the rights and duties of the parties arising from or relating in any way to the subject matter of this contract'" would govern the entirety of the contracting parties' relationship.[54]

---

[50] *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999).
[51] *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. CV 15-1720, 2015 WL 7281618, at *10–11 (E.D. La. Nov. 16, 2015).
[52] *El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 344 F. Supp. 2d 986, 989 (S.D. Tex. 2004).
[53] *Mobil Expl. & Producing U.S. Inc. v. Certain Underwriters Subscribing to Cover Note 95-3317(A)*, 2001-2219 (La. App. 1 Cir. 11/20/02), 837 So. 2d 11, 42, *writ denied*, 2003-0418 (La. 4/21/03).
[54] *Caton v. Leach Corp.*, 896 F.2d 939, 943 n. 3 (5th Cir. 1990).

In this case, the choice-of-law clause provides:

The laws of the State of Texas shall govern the provisions of this agreement, its performance and any dispute arising out of it. Any dispute arising out of or in connection with this Agreement shall be governed in accordance with the laws of the State of Texas and the local courts of Dallas County, Texas shall have jurisdiction to adjudicate the matter.[55]

The remaining claims are: "tortious breach of contract under the DTPA," violations of the LUTPA (collectively referred to as "the consumer protection claims"), breach of fiduciary duty under Texas and Louisiana law, and breach of contract under Texas law. Plaintiffs argue that the breach of fiduciary duty and consumer protection claims do not fall within the scope of the choice-of-law clause.[56]

At the outset, the Court notes that the Texas breach of contract claims clearly fall within the scope of the clauses. As such, the Court must inquire only as to whether the breach of fiduciary duty and consumer protection claims are controlled by the choice-of-law clauses.

The Court finds that the clauses at issue in this case fall somewhere between the broad and narrow clauses that courts have considered under Texas and Louisiana law. In all of the narrow clause cases, the choice-of-law clauses specifically refer to the construction and/or interpretation of the agreement.[57] The instant clause goes one step

---

[55] Plaintiffs did not attach the contracts to any of their *Complaints*. However, all parties agree on the language of the choice-of-law clause. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 19, p. 4; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, p. 3.

[56] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, p. 3; Plaintiffs argue that the "tort" claims do not fall within the choice-of-law clause. As discussed below, consumer protection claims sound in tort, so the Court will consider these arguments.

[57] "'This agreement shall be governed by and construed . . . in accordance with the law of the state of Louisiana for land work.'" *Foshee v. Torch Operating Co.*, 1999-1863 (La. App. 3d Cir. 5/17/00), 763 So. 2d 82, 88–90, *writ denied*, 2000-2302 (La. 10/27/00), 772 So. 2d 658; "'This agreement shall be interpreted and enforced in accordance with the laws of the State of Texas, U.S.A.'" *Stier v. Reading & Bates Corp.*, 992 S.W.2d 423, 433 (Tex. 1999); "This agreement is made subject to and shall be construed under the

further by stating that "the laws of the State of Texas . . . shall govern any dispute arising out of [the Agreement]" and "[a]ny dispute arising out of or *in connection* with this Agreement . . . ."[58] This falls short of the *Caton* example,[59] but the words "in connection with this Agreement" are broader than the language that the Southern District of Texas held included the plaintiff's tort claims.[60]

If Oyo owed Plaintiffs a fiduciary duty, that duty as pled here could only have been created by the contracts. Indeed, the only duties that Plaintiffs allege Oyo breached stem from the contracts.[61] The Court has no trouble concluding that the alleged fiduciary duties and breaches "arose from" and were "in connection with" the contracts, and as such, are bound by the choice-of-law provision if it is valid under Louisiana law.

As to the claims under the consumer protection statutes, Plaintiffs' claims center around the contracts. Plaintiffs claim that Oyo violated the consumer protection statutes in several ways. First, as to the original Zodiac–Oyo contract, Zodiac asserts that Oyo's inclusion of a choice-of-law clause applying the law of the Netherlands and venue in Amsterdam was part of a "scheme" to make it impossible for Zodiac to enforce the contract.[62] Trident's claim is analogous, except that the choice-of-law clause provided for application of Texas law and venue in Dallas County.[63] Second, Plaintiffs allege that Oyo

---

laws of the State of Texas (excluding its conflicts-of-laws principles)." *Wright's Well Control Servs., LLC v. Oceaneering Int'l, Inc.*, No. CV 15-1720, 2015 WL 7281618, at *10–11 (E.D. La. Nov. 16, 2015).

[58] Emphasis added.

[59] *Caton v. Leach Corp.*, 896 F.2d 939, 943 n. 3 (5th Cir. 1990).

[60] "[I]n connection with the performance of this [a]greement . . . ."

[61] Plaintiffs allege Oyo had duties to: prudently set rates for the hotels, collect money on behalf of Plaintiffs, and remit the money to Plaintiffs. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, pp. 10–11; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 9, ¶ 26; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 11, ¶ 30.

[62] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 7, ¶ 17.

[63] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 8, ¶ 18.

never intended to perform, so the contracts were simply a trick to get control of Plaintiffs' revenue streams.[64] Third, Plaintiffs allege that Oyo represented "it would have a person on scene at the hotel however it did not and did not in fact intend to have the promised person at the hotel."[65] Relatedly, Plaintiffs claim that "Oyo's booking system in fact had numerous problems and was not as represented."[66] Fourth, and finally, Trident alleges that, after Zodiac and Trident cancelled their respective contracts, Oyo sent Trident a demand for cancellation fees "in an effort to intimidate Trident and Zodiac . . . ."[67]

The Court finds that the consumer protection claims fall within the scope of the clause. Most of Plaintiffs' allegations differ from standard breach of contract claims only because of Oyo's alleged premeditated intent not to perform. As such, these claims are "in connection with" with the contracts. Regarding Oyo's inclusion of choice-of-law clauses, that claim is "in connection with" the contracts because it is a provision of them. The rest of Plaintiffs' consumer protection allegations, such as the allegedly intimidatory demand letter, are derivative of the contracts and "in connection with" them.

The Court has determined that the choice-of-law clauses embrace all of Plaintiffs' claims. This is not the end of the analysis, however, because the Court must apply Louisiana's choice-of-law analysis to determine what effect to give to the choice-of-law clauses.

---

[64] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 7–8, ¶ 17–22; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 8–9, ¶ 18–23.

[65] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 7, ¶ 20; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 8, ¶ 21.

[66] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 7, ¶ 20; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 8, ¶ 21.

[67] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 9, ¶ 21; Zodiac also received a demand letter. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7 p. 5, ¶ 12.

2.  Louisiana Choice-of-Law Analysis

"In making a choice-of-law determination, a federal court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state . . . ."[68] Louisiana's choice-of-law analysis is set forth in articles 3515–3549 of the Louisiana Civil Code. These articles are divided into Titles. At issue here are Titles VI and VII titled "Conventional Obligations" and "Delictual and Quasi-Delictual Obligations," respectively. Oyo argues that Title VI, and specifically article 3540, controls and gives effect to the choice-of-law clause, so Texas law applies to all claims.[69] Plaintiffs argue that Title VII, and specifically articles 3542 and 3543, overrules the parties' choice-of-law clauses as to the tortious and consumer protection claims.[70]

The first step in the analysis is to determine within which category each of Plaintiffs' claims fall. A conventional obligation is an obligation created by contract.[71] Plaintiffs' claims for breach of contract clearly fall within this category. The same goes for the claims of breach of fiduciary duty.[72] Under established Fifth Circuit precedent, "an action for breach of a fiduciary duty arises from the special relationship between the fiduciary and the one who claims the duty . . . which therefore arises in contract (or quasi-contract)."[73] On the other hand, violations of the LUTPA are delictual or quasi-delictual in nature.[74]

---

[68] *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (citing *Klaxon v. Stentor Elec. Mfg Co.*, 313 U.S. 487, 496 (1941)).

[69] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17-1, p. 5.

[70] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, pp. 3–6. The parties have not directed the Court to any case that presents the instant facts: a choice-of-law clause that is broad enough to encompass all claims and application of Louisiana choice-of-law rules.

[71] § 1.13.Obligations in the Louisiana Civil Code, 5 La. Civ. L. Treatise, Law Of Obligations § 1.13 (2d ed.)

[72] As pled, the Plaintiffs point to no other source of a fiduciary duty other than the contracts.

[73] *Louisiana v. Guidry*, 489 F.3d 692, 705 (5th Cir. 2007); See also *Broyles v. Cantor Fitzgerald & Co.*, No. CIV.A. 10-854-JJB, 2013 WL 2422858, at *1 (M.D. La. June 3, 2013).

[74] *2802 Magazine St., L.L.C. v. Eggspressions of N. Am., L.L.C.*, 2019-0085 (La. App. 4 Cir. 5/22/19), 274 So. 3d 1279, 1285. This conclusion is bolstered by the fact that the prescription period for a LUTPA claim

Similarly, violations of the DTPA sound in tort.[75] Therefore, the Court must use Louisiana's statutory interpretation rules to determine whether the articles governing delictual and quasi-delictual obligations overrule the choice-of-law provision in the parties' contracts as to the claims under the LUTPA and DTPA.

Legislation is the primary source of law in Louisiana.[76] "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature."[77] "Laws on the same subject matter must be interpreted in reference to each other."[78]

The Louisiana Supreme Court recently reiterated several of its rules of statutory interpretation:

> Words and phrases must be read with their context and construed according to the common and approved usage of the language. "The word 'shall' is mandatory and the word 'may' is permissive." Further, every word, sentence, or provision in a law is presumed to be intended to serve some useful purpose, that some effect is given to each such provision, and that no unnecessary words or provisions were employed. Consequently, courts are bound, if possible, to give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage if a construction giving force to and preserving all words can legitimately be found.

> Where two statutes deal with the same subject matter, they should be harmonized if possible, as it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws. However, if there is a conflict,

---

is one year, whereas the period for breach of contract ranges from three to ten years, depending on the type of contract. See La. Civ. Code art. 3494–3501.

[75] *Rochelle Apartments Co. v. Mouradian*, No. 05-91-01226-CV, 1992 WL 187125, at *8 (Tex. App. Aug. 5, 1992), *writ denied* (Jan. 13, 1993); *Clary Corp. v. Smith*, 949 S.W.2d 452, 463 (Tex. App. 1997); *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex. 1996) (differentiating between contract and DTPA causes of action).

[76] La. Civ. Code art. 1 cmt. (a).

[77] La. Civ. Code art. 9.

[78] La. Civ. Code art. 13.

the statute specifically directed to the matter at issue must prevail as an exception to the statute more general in character.[79]

To reiterate, Oyo contends that article 3040 "Party Autonomy," which is in Title VI, "Conventional Obligations," mandates the application of Texas law to all claims given that the parties agreed to Texas choice-of-law.[80] Plaintiffs argue that Title VII, "Delictual and Quasi-Delictual Obligations," and specifically articles 3542 and 3543, overrules the parties' choice-of-law clauses as to the consumer protection claims.

Both Titles contain a "General Rule," which strongly suggests that each Title is a separate legal regime applying to different types of claims. Article 3537 supplies Title VI's general rule:

> Except as otherwise provided in this Title, an issue of conventional obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.

> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the transaction, including the place of negotiation, formation, and performance of the contract, the location of the object of the contract, and the place of domicile, habitual residence, or business of the parties; (2) the nature, type, and purpose of the contract; and (3) the policies referred to in Article 3515, as well as the policies of facilitating the orderly planning of transactions, of promoting multistate commercial intercourse, and of protecting one party from undue imposition by the other.

Article 3540 "provides otherwise":[81]

> *All other issues*[82] *of conventional obligations* are governed by the law expressly chosen or clearly relied upon by the parties, except to the extent

---

[79] *Arabie v. CITGO Petroleum Corp.*, 2010-2605 (La. 3/13/12), 89 So. 3d 307, 312–13 (internal citations omitted).

[80] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17-1, p. 5.

[81] La. Civ. Code art. 3540.

[82] The only other articles in the Title deal with issues of form and capacity; Article 3540 is a catch-all. Emphasis added.

that law contravenes the public policy of the state whose law would otherwise be applicable under Article 3537.

By the plain meaning of the text, the articles only apply to "issues" of conventional obligations. In other words, article 3540 provides for the application of the parties' choice-of-law to *contractual* issues. This is very different than Oyo's interpretation, which is that the article provides for the enforcement of a choice-of-law provision. It is also notable that the Louisiana Legislature restricted article 3540 to "issues of conventional obligations." If the Legislature had intended article 3540 to apply to all issues, the words "of conventional obligations" would be superfluous. Given that Louisiana courts must "give effect to all parts of a statute and to construe no sentence, clause, or word as meaningless and surplusage . . . .,"[83] the Court finds that Oyo's interpretation is incorrect and article 3540 applies only to contractual issues between the parties. An examination of Title VII confirms this analysis.

Like Title VI, Title VII, "Delictual and Quasi-Delictual Obligations," begins with a "General Rule" contained in article 3542. Article 3542 mirrors article 3537 except, instead of "an issue of conventional obligations," article 3542 applies to "an issue of delictual or quasi-delictual obligations." Once again, the structure of the respective articles and Titles evidences an intent to apply different regimes to contract and tort issues. The Court finds that the plain language of the relevant articles and structure of the Titles indicate that article 3540 does not apply to issues of delictual or quasi-delictual obligations. It follows that the parties' choice-of-law does not apply to the consumer protection claims. Articles

---

[83] *Abadie*, 89 So. 3d at 312.

62300

3537–3540 govern the choice-of-law analysis as the breach of contract and breach of fiduciary duty claims.[84] Articles 3542–3548 govern the choice-of-law analysis as to the consumer protection claims. While this approach may result in different states' laws applying to different issues, Louisiana courts have recognized this possibility.[85]

Beginning with the breach of contract and breach of fiduciary duty claims, which sound in contract,[86] the parties chose Texas law to apply to the contracts. Under Article 3540, the Court must apply Texas law unless Texas law "contravenes the public policy of the state that would otherwise be applicable under 3537." So, the next step is to determine which states' law would otherwise be applicable considering the policies articulated in Article 3537.[87]

Article 3537 directs courts to consider the parties' contacts with different states, the nature of the contract, and the policies articulated in Article 3515. Accepting Plaintiffs' facts as true, the pertinent contacts with Texas are limited to it being Oyo's principal place of business.[88] Accepting Plaintiffs' facts as true, both Plaintiffs' principal places of

---

[84] The Court notes that Professor Symeonides, principal drafter of the most current revision to Louisiana's conflict of law rules, wrote that party autonomy (article 3540) is "confin[ed] to contractual issues" and that the scope of a choice-of-law clause is not a matter of "contractual intent" but rather one of "contractual power." Symeon C. Symeonides, *Choice-of-law in the American Courts in 2005: Nineteenth Annual Survey*, 53 AM. J. COMP. L. 559, 629–631 (2005). He continued: "Article 3540 of the Louisiana Civil Code confines party autonomy to 'conventional obligations,'" and, as the drafter of the article can attest, this choice of words was intentional.'" *Id.* at n. 462.

[85] *Pelican Point Operations, L.L.C. v. Carroll Childers Co.*, 2000-2770 (La. App. 1 Cir. 2/15/02), 807 So. 2d 1171, 1175, *writ denied sub nom., Pelican Point Operations, L.L.C. v. Carroll Childres Co.*, 2002-0782 (La. 5/10/02), 816 So. 2d 293 ("Louisiana's conflict of law principles recognize the concept of 'depecage,' as La. C.C. arts 3515 and 3542 use the term 'issue.' Under this concept, courts utilize an issue-by-issue analysis that may result in laws of different states being applied to different issues in the same dispute.").

[86] *Louisiana v. Guidry*, 489 F.3d 692, 705 (5th Cir. 2007); See also *Broyles v. Cantor Fitzgerald & Co.*, No. CIV.A. 10-854-JJB, 2013 WL 2422858, at *1 (M.D. La. June 3, 2013).

[87] *Cherokee Pump & Equipment Inc. v. Aurora Pump*, 38 F.3d 246, 251–52 (5th Cir. 1994).

[88] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 1, ¶ 2.

business are in Louisiana.[89] The contracts were negotiated, formed, and meant to be performed in Louisiana.[90] The purpose of the contract was for Oyo to help Plaintiffs operate hotels in Louisiana.[91] The policies of facilitating the orderly planning of transactions and promoting multistate commercial intercourse weigh in favor of Texas because the parties agreed to Texas law in the contracts. While Plaintiffs allege some degree of undue imposition,[92] they offer no specific facts to suggest undue imposition of the choice-of-law clauses.[93] The Court also finds that the policies articulated in article 3515 weigh equally for Louisiana and Texas for the reasons stated above.[94]

After considering the policies articulated in articles 3537 and 3515, the Court concludes that Louisiana is the state whose law "would otherwise be applicable under article 3537."[95] Following the command of article 3540, the Court must give effect to the

---

[89] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 1, ¶ 1A; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 1, ¶ 1.
[90] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 2, ¶ 3; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 2, ¶ 3.
[91] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 1, ¶ 1A; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 1, ¶ 1.
[92] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, pp. 2–3, ¶ 5; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 3, ¶ 5.
[93] The Court finds it notable that Trident, who shares principals with Zodiac, signed a contract with Oyo several months after the Zodiac–Oyo contract and apparently did not bargain for a different choice-of-law clause. The United States Supreme Court has held that lack of negotiation does not render a forum selection clause unenforceable. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593 (1991).
[94] Article 3515 states:
    Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
    That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
[95] La. Civ. Code art. 3540.

parties' choice-of-law provision unless doing so would violate a public policy of the State of Louisiana.[96]

"The law of a state and its public policy are not necessarily synonymous. Not every law enacted by the legislature embodies 'public policy' of the state."[97] Were that the case, the exception to article 3540 would swallow the general rule of party autonomy.[98]

Plaintiffs bear the burden of pleading facts demonstrating that the application of Texas law in this case would violate a public policy of the state of Louisiana.[99] Plaintiffs do not identify any public policies of Louisiana that would be disserved by the application of Texas law to the breach of contract and breach of fiduciary duty claims. As such, Plaintiffs have failed to plead facts supporting an argument that the exception to article 3540 should apply; therefore, the Court will give full effect to the parties' choice-of-law clauses and apply Texas law to the breach of contract and breach of fiduciary duty claims. Accordingly, Plaintiffs' claims for breach of fiduciary duty under Louisiana law are dismissed.

Turning to the consumer protection claims, articles 3542–3548 govern the analysis. Article 3542 provides the starting point:

> Except as otherwise provided in this Title, an issue of delictual or quasi-delictual obligations is governed by the law of the state whose policies would be most seriously impaired if its law were not applied to that issue.
>
> That state is determined by evaluating the strength and pertinence of the relevant policies of the involved states in the light of: (1) the pertinent contacts of each state to the parties and the events giving rise to the dispute, including the place of conduct and injury, the domicile, habitual residence,

---

[96] *Cherokee Pump & Equip. Inc. v. Aurora Pump*, 38 F.3d 246, 252 (5th Cir. 1994).
[97] *Id.*
[98] *Id.*
[99] *Id*; ("The party seeking to invalidate the choice-of-law provision bears the burden of proving invalidity.") *Curtis Callais Welding, Inc. v. Stolt Comex Seaway Holdings, Inc.*, 129 F. App'x 45, 52 (5th Cir. 2005).

or place of business of the parties, and the state in which the relationship, if any, between the parties was centered; and (2) the policies referred to in Article 3515, as well as the policies of deterring wrongful conduct and of repairing the consequences of injurious acts.

Article 3543 "otherwise provides":

Issues pertaining to standards of conduct and safety are governed by the law of the state in which the conduct that caused the injury occurred, if the injury occurred in that state or in another state whose law did not provide for a higher standard of conduct.

In all other cases, those issues are governed by the law of the state in which the injury occurred, provided that the person whose conduct caused the injury should have foreseen its occurrence in that state.

As other courts have noted, "[c]onsumer protection is inherently" a standard of conduct issue.[100] The Court agrees. As such, article 3543 governs the choice-of-law analysis for Plaintiffs' consumer protection claims.

Article 3543 requires that the Court determine in what state the conduct that caused the injury occurred. As noted above, Plaintiffs claim that Oyo entered the contracts with no intention of ever performing in violation of the DTPA and/or LUTPA, that Oyo's use of choice-of-law clause violates the DTPA and/or LUTPA, and that Oyo's sending a demand letter violates the DTPA and/or LUTPA. The conduct giving rise to the injury caused by the first two claims occurred when the contracts were negotiated and executed, which was in Louisiana. Oyo sent the demand letter into Louisiana and its intimidatory effect, if any, did not occur until Plaintiffs' receipt in Louisiana. As such, Louisiana is the state where the conduct that caused the injury occurred, so article 3543

---

[100] *Kreger v. Gen. Steel Corp.*, No. CIV.A. 07-575, 2010 WL 2902773, at *13 (E.D. La. July 19, 2010).

mandates that Louisiana law apply to the consumer protection claims. Plaintiffs' DTPA claims are dismissed.

### C. Claims Brought Under the Louisiana Unfair Trade Practices and Consumer Protection Law[101]

Plaintiffs' LUTPA claims cannot survive Oyo's *Motion to Dismiss*. The LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ."[102] "Louisiana has left the determination of what is an 'unfair trade practice' largely to the courts to decide on a case-by-case basis."[103] "The courts have repeatedly held that, under this statute, the plaintiff must show the alleged conduct 'offends established public policy and ... is immoral, unethical, oppressive, unscrupulous, or substantially injurious.'"[104] The Louisiana Supreme Court has explained that "the range of prohibited practices under LUTPA is extremely narrow."[105] Further, the United States Court of Appeals for the Fifth Circuit has held that "the statute does not provide an alternate remedy for simple breaches of contract. There is a great deal of daylight between a breach of contract claim and the egregious behavior the statute proscribes."[106]

Plaintiffs claim that Oyo violated the LUTPA in several ways. First, as to the original Zodiac–Oyo contract, Zodiac asserts that Oyo's inclusion of a choice-of-law clause

---

[101] Neither party addresses whether Plaintiffs have standing under the LUTPA. The Court will assume for the purposes of this *Ruling* that Plaintiffs have standing; however, the Court notes that *Cheramie Services Inc. v. Shell*, which expanded LUTPA standing, was a *plurality* opinion of the Louisiana Supreme Court.
[102] La. R.S. § 51:1405(A).
[103] *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir. 1993); *Cheramie Services, Inc. v. Shell Deepwater Production, Inc.*, 35 So.3d 1053, 1059 (La. 2010) ("It has been left to the courts to decide, on a case-by-case basis, what conduct falls within the statute's prohibition.").
[104] *Cheramie*, 35 So.3d at 1059 (citations omitted).
[105] *Id.* at 1060.
[106] *Turner*, 989 F.2d at 1422; *Innovative Sales, LLC v. Northwood Mfg., Inc.*, 07-30598, 2008 WL 3244114, at *6 (5th Cir. 2008) (slip copy) (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993)).

applying the law of the Netherlands and venue in Amsterdam was part of a "scheme" to make it impossible for Zodiac to enforce the contract.[107] Trident's claim is analogous, except that the choice-of-law clause provided for application of Texas law and venue in Dallas County.[108] Second, Plaintiffs allege that Oyo never intended to perform, so the contracts were simply a ruse to get control of Plaintiffs' revenue streams.[109] Third, Plaintiffs allege that Oyo represented "it would have a person on scene at the hotel however it did not and did not in fact intend to have the promised person at the hotel."[110] Relatedly, Plaintiffs claim that "Oyo's booking system in fact had numerous problems and was not as represented."[111] Fourth, and finally, Trident alleges that, after Zodiac and Trident cancelled their respective contracts, Oyo sent Trident a demand for cancellation fees "in an effort to intimidate Trident and Zodiac . . . ."[112]

Plaintiffs' first allegation is that Oyo's use of choice-of-law clauses was an unfair or deceptive trade practice under the LUTPA. As to Zodiac's contract, regardless of the merits of that contention, the parties amended the contract to provide for Texas choice-of-law and venue in Dallas County.[113] This, coupled with the fact that Zodiac provides no authority for its contention that a provision for foreign law and venue violates the LUTPA, is sufficient to convince the Court that the original application of the law of the Netherlands

---

[107] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7 p. 7, ¶ 17.

[108] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 8, ¶ 18.

[109] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7 p. 7–8, ¶ 17–22; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 8–9, ¶ 18–23.

[110] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7 p. 7, ¶ 20; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 8, ¶ 21.

[111] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7 p. 7, ¶ 20; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 8, ¶ 21.

[112] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 9, ¶ 21; Zodiac also received a demand letter. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 5, ¶ 12.

[113] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 2, ¶ 5.

and venue in Amsterdam was not a deceptive or unfair trade practice as to Zodiac under the LUTPA.[114]

After the parties amended the Zodiac–Oyo contract, both the Zodiac–Oyo contract and the Trident–Oyo contract provided for application of Texas law and venue in Dallas County.[115] Zodiac alleges that it was forced to accept Texas law because application of the law of the Netherlands and venue in Amsterdam was more onerous.[116] Meanwhile, Trident provides no context for the inclusion of the choice-of-law and forum clauses in its contract beyond that it was done in order to make it conform with the Zodiac–Oyo contract.[117]

Zodiac's contention is severely undercut by the fact that the Trident–Oyo contract, which Zodiac's principals entered into *after* the parties amended the Zodiac–Oyo contract, also provided for Texas law and venue in Dallas County.[118] Both Zodiac's and Trident's contentions are likewise severely undercut by the fact that neither *Complaint* indicates that Zodiac or Trident attempted to negotiate the choice-of-law and forum selection clauses.[119] More to the point, Plaintiffs provide no authority for their contentions that the inclusion of Texas choice-of-law and forum selection clauses are violations of the LUTPA. The inclusion of the Texas choice-of-law and forum selection clauses in the contracts does not nearly rise to the level of being "'immoral, unethical, oppressive, unscrupulous,

---

[114] Zodiac alleges that the provision was not negotiated and that "Zodiac did not catch the significance of it initially." *Id.* The United States Supreme Court has held that lack of negotiation does not render a forum selection clause unenforceable. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593–95 (1991).

[115] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 3, ¶ 5; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 6, ¶ 13.

[116] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 3, ¶ 5.

[117] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 6, ¶ 13.

[118] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 1, 6 ¶¶ 1, 13.

[119] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17-1, p. 3.

or substantially injurious,'"[120] especially given that Oyo's principal place of business is in Texas.[121] Plaintiffs' LUTPA claims on this ground fail.

Plaintiffs also allege that Oyo never intended to perform under the contracts and that the contracts were "just an artifice to obtain control of [Plaintiffs'] revenue streams through online booking."[122] Plaintiffs, however, provide no further allegations to support this claim beyond that Oyo allegedly did not perform under the contracts. Mindful of the Supreme Court's admonition that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do,"[123] the Court concludes that Plaintiffs have failed to provide more than "labels and conclusions" as to their claims that Oyo never intended to perform. As such, these claims will be dismissed.[124]

As for Plaintiffs' allegation that Oyo represented "it would have a person on scene at the hotel however it did not and did not in fact intend to have the promised person at the hotel,"[125] the Fifth Circuit has clearly stated that "the LUTPA does not provide an

---

[120] *Cheramie*, 35 So.3d at 1059 (citations omitted).
[121] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 1, ¶ 2.
[122] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 7, ¶¶ 17–19; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 7, ¶ 15.
[123] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and brackets omitted).
[124] The Court notes that if an allegation of a premeditated breach of contract was all that was necessary to state a claim under the LUTPA, then every breach of contract claim would have an attendant LUTPA remora.
[125] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7 p. 7, ¶ 20; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 8, ¶ 21.

alternate remedy for simple breaches of contract."[126] Plaintiffs' remedies lie in contract, and shall be dismissed as brought under the LUTPA.

Finally, Plaintiffs allege that, after they canceled the contracts, Oyo retaliated by sending them demand letters "in an effort to intimidate [Plaintiffs].[127] Plaintiffs assert that Oyo breached, so it had no right to make any demand, and, in any event, the demand was in excess of the contractually stipulated cancellation fees.[128] Plaintiffs cite no authority, and provide no arguments, for the contention that this violates the LUTPA. As such, under applicable jurisprudence, Plaintiffs' allegations, accepted as true, do not legally satisfy the requirement that the conduct "'offend[] established public policy and . . . [be] immoral, unethical, oppressive, unscrupulous, or substantially injurious.'"[129] Therefore, Plaintiffs' claims under the LUTPA are dismissed.

### D. Analysis of the Claims for Breach of Fiduciary Duty Under Texas Law

Plaintiffs' claims for breach of fiduciary under Texas law survive Oyo's *Motion to Dismiss*. Under Texas law, "'[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant.'"[130] A fiduciary duty includes duties of fair dealing, good faith, integrity, and fidelity.[131] Texas law recognizes two types of fiduciary

---

[126] *Innovative Sales, LLC v. Northwood Mfg., Inc.*, 07-30598, 2008 WL 3244114, at *6 (5th Cir. 2008) (quoting *Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993)).
[127] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 5, ¶ 12; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13 p. 9, ¶ 21.
[128] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 9, ¶ 23.
[129] *Cheramie*, 35 So.3d at 1059 (citations omitted).
[130] *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007) (quoting *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex. App.—Dallas 2006, pet. denied)); *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 169 (5th Cir. 2010).
[131] *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007).

relationships.[132] The first, a formal fiduciary relationship, "arises as a matter of law and includes the relationships between attorney and client, principal and agent, partners, and joint venturers."[133] The second, an informal relationship, "may arise where one person trusts in and relies upon another, whether the relationship is a moral, social, domestic, or purely personal one."[134] The Fifth Circuit in *Lincoln General Ins. Co. v. U.S. Auto Ins. Services*, *Inc.*, noted that "control over funds belonging to others is the classic situation in which a fiduciary duty arises."[135]

Plaintiffs allege that:

[U]nder the terms of the contract[s] Oyo became the fiduciary of [both Plaintiffs][136] for the collection of bookings through on line [sic] services and Oyo has failed to account to [both Plaintiffs] for a portion of the money that Oyo handled. Oyo owes [both Plaintiffs] these funds.[137]

The Court concludes that Plaintiffs have adequately pled a breach of fiduciary duty under the above theory. Plaintiffs allege that Oyo collected Plaintiffs' money from online reservations and failed to remit it to them. Under *Lincoln General Ins. Co.*, the collection of Plaintiffs' money suffices to demonstrate a fiduciary relationship, since Oyo was operating as Plaintiffs' agent.[138] Plaintiffs' allegation that Oyo failed to remit the funds to them is sufficient to establish a breach of that duty, considering that a fiduciary duty includes the duties of good faith, fair dealing, integrity, and fidelity.[139] Plaintiffs have

---

[132] *Id.*

[133] *Id.*

[134] *Id.*

[135] *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 728 (5th Cir. 2015) (citing *Pegram v. Herdrich*, 530 U.S. 211, 231 (2000)).

[136] These paragraphs of the *First Amended Complaints* are identical. The only thing changed is the name of the Plaintiff.

[137] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 11, ¶ 29; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 9, ¶¶ 22, 26.

[138] *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 728 (5th Cir. 2015).

[139] *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007).

adequately alleged damages from that breach because, according to Plaintiffs, Oyo never remitted the money to them.[140] Oyo's *Motion to Dismiss* on these grounds is denied.[141]

Plaintiffs also allege: "Oyo also had a fiduciary duty to [both Plaintiffs] to exercise its authority to fix rates for [both Plaintiffs'] property prudently and failed to prudently set rates causing reputation damage and loss of income to [both Plaintiffs].[142] In contrast to the above theory, Plaintiffs and Oyo devote significant time to briefing the viability of this theory.

Oyo argues that, notwithstanding Plaintiffs' complaints that the rates were too low, "both parties anticipated there would be an adjustment of rates over the life of the contract to permit Oyo to fulfill its obligations which was, ultimately, to the benefit of both parties if successful."[143] The crux of Oyo's argument is that "[t]he relative success or failure of the decision to lower rates as described and Plaintiffs' disappointment with the results does not, without more, make it plausible on the face of the First Amended Complaints that Oyo failed to deal fairly with Plaintiffs in its decision-making under the parties' applicable agreements."[144]

Plaintiffs counter that:

> The tie to setting of rates at the hotels is that the setting or [sic] rates was manipulated to maximize the money that Oyo would handle (which Oyo was keeping) and not for the benefit of Plaintiff's [sic] businesses. The rates are completely tied in with the collection of the money.[145]

---

[140] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 11, ¶¶ 23, 29; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 9, ¶ 25.
[141] Oyo asserts that it is not moving to dismiss this theory of the Texas breach of fiduciary duty claim. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 19, p. 7. Oyo's proposed pleading attached to its *Motion to Dismiss*, however, does request its dismissal. Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17-3.
[142] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 11, ¶ 30; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 9, ¶ 26.
[143] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17-1, p. 8.
[144] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17-1, p. 8.
[145] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, p. 10.

Plaintiffs correctly argue that the facts supporting this theory are developed in the *First Amended Complaints*.[146] Oyo's counterargument in its *Reply* is merely a rehashing of its original argument.[147]

The Court has already concluded that Oyo's collection of money on Plaintiffs' behalf created a fiduciary duty. Reasoning *a fortiori*, if Oyo's collection of money to be remitted to Plaintiffs creates a fiduciary duty, then Oyo's determination of the amount of money it would collect is also subject to the standards of a fiduciary; Plaintiffs were equally if not more reliant on Oyo to act in Plaintiffs' interest when setting rates.

Moving on to the breach of the fiduciary duty, Plaintiffs allege that Oyo dropped the rates intentionally as part of a scheme to stimulate online booking revenue since Oyo controlled that revenue.[148] Oyo's argument that Plaintiffs' only allegation is dissatisfaction with the result of the lowering of prices is therefore unconvincing. Accepting Plaintiffs' facts as true, Oyo may have breached its fiduciary duty by violating the duty of good faith, integrity, or fidelity. Plaintiffs have adequately alleged damages from that breach because, according to Plaintiffs, Oyo never remitted the money to them.[149] Oyo's *Motion to Dismiss* Plaintiffs' claims for breach of fiduciary duty by Oyo's setting of rates is therefore denied.

---

[146] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, p. 10; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 8, ¶ 21; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 8. ¶ 22.
[147] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 19, p. 5. In large part verbatim, in fact.
[148] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 18, p. 10; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 8, ¶ 21; Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 8. ¶ 22.
[149] Case 3:20-cv-00067-SDD-RLB, Rec. Doc. No. 13, p. 11, ¶ 29; Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 7, p. 9, ¶ 25.

62300

## III.    CONCLUSION

For the foregoing reasons, Oyo's *Partial Motion to Dismiss*[150] is hereby GRANTED in part and DENIED in part.

Plaintiffs' claims for tortious breach of contract under Louisiana law were abandoned and accordingly are dismissed with prejudice for failure to oppose dismissal.

Plaintiffs' breach of contract and breach of fiduciary duty claims under Louisiana law are dismissed for the reason that the Court finds that Texas substantive law applies to the breach of contract and breach of fiduciary duty claims. Amendment would be futile and therefore the dismissal of the Louisiana breach of contract and Louisiana breach of fiduciary duty claims are with prejudice.

Plaintiffs' claims under the Texas Deceptive Trade Practices Act are dismissed for the reason that the Court finds that Louisiana law applies to the consumer protection claims. Amendment would be futile and therefore the Texas Deceptive Trade Practices claims are dismissed with prejudice.

Plaintiffs' Louisiana Unfair Trade Practices claim are dismissed for failure to state a claim, without prejudice.

Plaintiffs' claims for breach of contract under Texas law and breach of fiduciary duty under Texas law remain in this action.

---

[150] Case 3:20-cv-00063-SDD-RLB, Rec. Doc. No. 17-1.

62300

As to the claims dismissed without prejudice, the Plaintiffs shall have leave to amend to cure the deficiencies set forth herein, to the extent possible, within 21 days from the date of this Order. If Plaintiffs fail to amend within this deadline, the dismissal shall be converted to a dismissal with prejudice.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on <u>November 3, 2020</u>.


<u>_Shelly D. Dick_</u>

**JUDGE SHELLY D. DICK**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

62300